UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                           :
ANNETTE DIAZ and WILLIAM DIAZ,                             :          13-CV-1531 (ARR) (MG)
                                                           :
                    Plaintiffs,                            :          NOT FOR ELECTRONIC
                                                           :          OR PRINT PUBLICATION
        -against-                                          :
                                                           :          OPINION & ORDER
ANTHONY CALABRESE, CAL6 LLC and                            :
2 SNEDEN AVENUE, LLC,                                      :
                                                           :
                    Defendants.                            :
                                                           :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

        Plaintiffs, Annette and William Diaz, bring this diversity suit seeking damages for

personal injuries Ms. Diaz sustained on August 11, 2012, on the back porch of the Play Sports

Lounge, located at 2 Sneden Ave. in Staten Island, New York ("the premises").  Arguing that

Ms. Diaz's injuries were caused by a defective condition at the premises, plaintiffs sue both

Anthony Calabrese and CAL 6 LLC (collectively, "CAL6"), the owners of the building, and 2

Sneden Avenue, LLC ("Sneden"), the tenant at the premises and operator of the sports bar where

the incident occurred.  Landlord CAL6 has cross-claimed against tenant Sneden for "common-

law indemnity and/or contribution and/or contractual indemnification." CAL6 Answer, Dkt. #17,

¶¶ 57-59.

        Before the court are all defendants' motions for summary judgment on the plaintiffs'

negligence claim, and a motion for summary judgment by the CAL6 defendants against Sneden

on CAL6 defendants' cross-claims.  For the reasons set forth below, the defendants' motions for

summary judgment against the plaintiffs are denied, and the CAL6 defendants' motion on the

cross-claims is also denied.

# BACKGROUND[1]

Plaintiffs are residents of New Jersey. Am. Compl., Dkt. #19, ¶ 2. Defendant Anthony Calabrese is a resident of New York, and defendants CAL6 LLC and 2 Sneden Avenue, LLC, are New York limited liability companies that are headquartered and do business in New York. Id., ¶¶ 1, 3-5, 9. Mr. Calabrese and his wife formed CAL6 LLC in order to acquire a building at 2 Sneden Avenue in Staten Island, New York. Deposition of Anthony Calabrese and CAL6 LLC ("Calabrese Dep."), Dkt. #42, Ex. J, at 7-8. In 2008, defendant Sneden rented the premises from CAL6 and commenced operation there of the Play Sports Lounge, a sports bar. Deposition of Carmine Gualtieri ("Gualtieri Dep."), Dkt. #42, Ex. K, at 6; Calabrese Dep. at 8-9.

Plaintiff Annette Diaz was injured at the Play Sports Lounge on August 11, 2012, at approximately 12:30am. Deposition of Annette Diaz ("Pl. Dep."), Dkt. #42, Ex. H, at 11-12, 26-30. The plaintiff arrived at the bar around midnight, after eating dinner and having one or more drinks at a Staten Island restaurant. Id. at 12, 21-23. She proceeded through the back door of the bar onto a small, raised section of the outdoor deck in the rear of the premises. Id. at 29-31, 34; Calabrese Dep. at 14-15; Plaintiffs' Initial Disclosure Pursuant to Rule 26, Dkt. #42, Ex. E, at ECF 14. She then proceeded down the right-hand side of a four-step staircase leading to the main, lower portion of the outdoor deck, holding onto the bannister with her right hand as she descended. Pl. Dep. at 36-37, 39; Pls. 56.1 Statement Sneden, ¶ 4.

Ms. Diaz alleges that she was injured "when her right foot hit an uneven portion of

---

[1] Defendants have submitted statements of undisputed facts pursuant to Local Rule 56.1. CAL6 LLC Statement Pursuant to Rule 56.1 ("CAL6 56.1 Statement"), Dkt. #39; 2 Sneden Ave, LLC Statement Pursuant to Rule 56.1 ("Sneden 56.1 Statement"), Dkt. #44. Plaintiffs have included paragraph-by-paragraph counterstatements in their opposition. Plaintiffs' Counterstatement to Rule 56.1 Statement of Defendants Calabrese and CAL6, LLC ("Pls. 56.1 Statement CAL6"), Dkt. #43; Plaintiffs' Counterstatement to Rule 56.1 Statement of Defendant Sneden ("Pls. 56.1 Statement Sneden"), Dkt. #43. The following factual background is undisputed, unless indicated otherwise.

decking located at the bottom of the staircase in question." Pls. 56.1 Statement CAL6, ¶¶ 13-14; see Pl. Dep. at 42-46.[2] As she stepped onto the lower level of the deck with her right foot, with her left foot still on the last step, she "felt the sensation that [the deck] was not flat [as] she anticipated it would be," heard a "snap," "lost her footing," and "felt immediate pain in her right foot." Pls. 56.1 Statement CAL6, ¶ 14; see Pl. Dep. at 45-46. Ms. Diaz regained her balance without falling. Pl. Dep. at 45, 144-45. She did not "snag" or "stub" her foot on the deck, nor did she "slip" on the deck. Id. at 45. She was not obstructed in any way as she descended the stairs. Id. at 42-43.

At his deposition, Mr. Calabrese testified that when he purchased the premises in 2004, a wood deck had been attached to the building. Calabrese Dep. at 14. He replaced that deck sometime between 2004 and 2008, before Sneden became a tenant, but performed no repairs to the deck since 2008, when Sneden's tenancy commenced. Id. at 23, 26-27; Gualtieri Dep. at 33. Carmine Gualtieri, the owner of Sneden, testified that he had performed cosmetic repairs to the deck, including painting, power washing, and installing handrails. Gualtieri Dep. at 11-12. According to all defendants, there had been no prior trip and falls on the deck or the staircase leading to the lower deck area. Id. at 34; Calabrese Dep. at 29, 31-32. Gualtieri attested that he had never complained to CAL6 about the condition of the deck or the stairs, Gualtieri Dep. at 33, and Calabrese confirmed that he had never received any complaints about the condition of the deck or the stairs, Calabrese Dep. at 28, 32. Ms. Diaz never complained of uneven decking at the premises prior to the occurrence of the incident. Pl. Dep. at 119.

---

[2] The defendants characterize the plaintiff's testimony regarding the location of the injury as the "last and final step," presumably before the deck. CAL6 56.1 Statement, ¶ 13; Sneden 56.1 Statement, ¶ 5. However, in their memoranda of law they appear to agree with the plaintiffs' interpretation that the injury occurred as Ms. Diaz stepped onto the lower deck. Pls. 56.1 Statement CAL6, ¶¶ 13-14; Pls. 56.1 Statement Sneden, ¶¶ 5-6; Memorandum of Law In Support of the CAL6 Defendants' Motion for Summary Judgment ("CAL6 Mem."), Dkt. #41, at 9; Memorandum of Law Supporting [2 Sneden Ave, LLC's] Summary Judgment [Motion] ("Sneden Mem."), Dkt. #45, at 2.

Defendants contend that plaintiffs do not know how long the unevenness in the decking had existed. CAL6 56.1 Statement, ¶ 21; Sneden 56.1 Statement, ¶ 10. Plaintiffs counter that while they have no specific knowledge of when the condition first appeared, the testimony of their expert engineer supports their contention that "the condition existed over a period of many months prior to the accident." Pls. 56.1 Statement CAL6, ¶ 21; see Letter of Joseph A. Pasaturo dated Feb. 11, 2013 ("Pasaturo Report"), attached as part of Plaintiffs' Expert Witness Disclosure ("Pls. Exp. Discl."), Dkt. #44, Ex. H, at 2. According to defendant Sneden, the height differential between the uneven deck planks was less than one centimeter. Gualtieri Dep. at 44. Plaintiffs disagree, citing a report by their private investigator who "measured the height differential of the defect and found [it] to be approximately two (2) inches." Pls. 56.1 Statement CAL6, ¶ 29; Letter of Stuart Schwartz dated Jan. 18, 2013 ("Schwartz Report"), attached as part of Pls. Exp. Disc., Dkt. #44, Ex. H, at 2.

A five-year lease between CAL6 and Sneden, executed in October of 2008, was in force on the date of the incident. Lease Agreement ("Lease") and Rider to Lease ("Rider"), Dkt. #42, Ex. L; Gualtieri Dep. at 7. The lease required Sneden, as tenant, to "make all repairs of every kind," Lease, ¶ 2, except for "structural repairs to the premises" to be done by CAL6 as landlord, Rider, ¶ 28.[3] If Sneden failed to make any required repairs, CAL6 reserved the right to access the premises "for the purposes of making repairs," Rider, ¶ 57, and to do so at Sneden's expense, Rider, ¶ 36. The Rider also required Sneden to "maintain, for the benefit of the Landlord, liability insurance in the sum of $1,000,000.00," Rider, ¶ 30; to name CAL6 as "an insured in the said policy," id.; and to deliver "copies of all insurance policies . . . to the landlord prior to the execution of the lease," Rider, ¶ 45. It provided, further, that, "[s]hould the Tenant fail to obtain

---

[3] Pursuant to Paragraph 50 of the Rider, "[a]ll provisions in any Rider hereto, are agreed to supersede and void similar provisions in the preprinted lease."

the aforesaid insurance . . . Landlord may do so and charge the cost thereof as rent." Rider, ¶ 32. On August 11, 2012, the date of the incident, Sneden had no liability insurance policy covering the premises. Gualtieri Dep. at 10.

On March 22, 2013, plaintiffs brought this suit alleging that defendants "caused and allowed the premises . . . to be and remain in a negligent condition," which resulted in physical injuries to Ms. Diaz and loss of consortium to Mr. Diaz. Am. Compl., ¶¶ 44-48. By answer filed July 1, 2013, Calabrese and CAL6 asserted cross-claims against Sneden for contribution, common-law indemnity, and contractual indemnity. CAL6 Answer, Dkt. #17, ¶¶ 57-59. Following discovery, including expert reports and depositions of the parties, defendants brought the instant summary judgment motions.

## DISCUSSION

### I.      Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed factual issues but to determine whether there is a genuine issue to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)) (internal quotation marks and ellipses omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other

firsthand information including but not limited to affidavits." <u>Nnebe v. Daus</u>, 644 F.3d 147, 156 (2d Cir. 2011) (quoting <u>In re Bennett Funding Grp., Inc.</u>, 336 F.3d 94, 99 (2d Cir. 2003)); <u>accord Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1223-24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." <u>LaBounty v. Coughlin</u>, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997).

"Summary judgment is difficult to obtain in negligence actions because whether conduct is 'negligent' is a factual determination in all but the most extreme situations." <u>Ortiz v. Rosner</u>, 817 F. Supp. 348, 350 (S.D.N.Y. 1993). However, "[t]hough courts are hesitant to grant summary judgment in negligence cases, the mere fact that a case involves a claim of negligence does not preclude a granting of summary judgment." <u>Hood v. Regency Maritime Corp.</u>, No. 99 Civ. 10250(CSH), 2000 WL 1761000, at *2 (S.D.N.Y. Nov. 30, 2000) (internal citation and quotation marks omitted).

## II.    Admissibility of Plaintiffs' Witnesses

As a preliminary matter, defendant Sneden contends that the evidence offered by two of plaintiffs' proposed witnesses – a private investigator who took photographs of the deck at Play Sports Lounge and an expert engineer who analyzed the photographs and also visited the bar –

are inadmissible on these motions under Rules 402 and 702 of the Federal Rules of Evidence. Sneden Mem. at 12-15.[4]

Stuart Schwartz, a licensed private investigator, visited the premises on January 19, 2013, and prepared a report and affidavit that are part of the record on this motion. Pls. Exp. Discl. at ECF 5; Schwartz Report. During that visit, he made various observations and took photographs and measurements of the area of the deck where Ms. Diaz claims she sustained her injury, as well as of the steps and the surrounding area. Schwartz Report. In his report, Mr. Schwartz described his visit to the Play Sports Lounge. He observed that, after stepping onto a small platform area of the deck, there were four steps with a "handle/banister on the western side of the staircase, which was loose and not very secured." Id. at 2. He further noted that "the composite plastic 'wood look' decking planks [at] the bottom of the steps, throughout the deck and including the stairs," were uneven. Id. More specifically, he observed that the first deck plank at the bottom of the steps was approximately two inches higher than the elevation of the rest of the decking. Id. He also noted that there were areas of unevenness beneath a nearby rubber floor mat. Id. Schwartz appended to his report eight photographs documenting his observations of the stairs and the deck.

Joseph Pasaturo is plaintiffs' expert engineer. According to his affidavit and report, he analyzed the photographs taken by Mr. Schwartz and, on that basis, opined that "the condition [of the deck] shown in the photographs was a dangerous and defective condition constituting a violation of the [New York City] Building Code." Pls. Exp. Discl. at ECF 7. In his report dated

---

[4] Plaintiffs argue that this objection is beyond the scope of the present motions. Memorandum of Law in Opposition to Defendants' Respective Motions for Summary Judgment ("Pls. Mem."), Dkt. #43, at ECF 25. Under Rule 56(c) of the Federal Rules of Civil Procedure, however, only admissible evidence may be considered when ruling on summary judgment motions. District courts may thus exclude irrelevant evidence, see Tretola v. First Unum Life Insurance Co., No. 13 Civ. 231, 2014 WL 2815586, at *4 (S.D.N.Y. June 23, 2014), and also "screen out inadmissible expert testimony on summary judgment," Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 350 (S.D.N.Y. 2005); see also Raskin v. Wyatt Co., 125 F.3d 55, 66-67 (2d Cir. 1997).

February 11, 2013, Mr. Pasaturo stated that the photographs "show a section of the decking material to be significantly damaged [and] not level with the rest of the decking." Pasaturo Report at 2. He expressed his professional opinion that "the damage noted in the photos appears to be deterioration that took place over a significant period of time, such as many weeks or months and not something that could [have] happened suddenly." Id. He further stated that it was his professional opinion that the damage to the deck "created an unsafe condition" that could cause an injury "if someone were to trip and fall while walking on the damaged decking or while coming down the uneven staircase onto the lower damaged decking," and that the conditions of the decking at the premises violated New York City building codes. Id. Mr. Pasaturo also visited the bar several months after Mr. Schwartz's visit and observed that repairs had been made to the deck since the Schwartz pictures were taken. Pls. Exp. Discl. at ECF 7.

Sneden argues that the court should not consider on these motions the evidence offered by either witness. First, Sneden claims that the Schwartz and Pasaturo reports are "irrelevant" because they focus on an area of the deck that is "some distance" from the precise location where Ms. Diaz injured herself. Sneden Mem. at 13. Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence," and that fact is "of consequence in determining the action." According to Sneden, observations about areas of the deck other than the precise location where the incident occurred neither make the existence of the defect in question more or less probable, nor do they have any consequence as to whether that specific defect existed. Sneden Mem. at 14. Sneden's argument overlooks, however, that Mr. Schwartz specifically observed that there was unevenness between the two deck planks at the bottom right of the stairs, the precise location that Sneden identifies as the relevant one. That Schwartz also photographed and observed other

areas does not make this portion of his testimony any less relevant. Furthermore, drawing all reasonable inferences in plaintiffs' favor, analysis of similar, nearby defects may, as plaintiffs argue, be indicative of "general neglect of care and maintenance," Pls. Mem. at ECF 26, and assist the trier of fact in determining the origin and duration of the specific defect in question. The testimony of Mr. Schwartz and Mr. Pasaturo regarding both the general area and specific location of the accident is relevant to determining the nature of the alleged defect and whether it caused Ms. Diaz's injury. See, e.g., Melini v. 71st Lexington Corp., No. 07 Civ. 701, 2009 WL 413608, at *5 (S.D.N.Y. Feb. 13, 2009) (understanding general condition of ramp "contributes to determining whether the ramp's condition caused [plaintiff's] fall").

Sneden also argues that Mr. Pasaturo's testimony is unnecessary because it does not assist the jury in understanding any of the fact evidence at issue in this case, as required by Rule 702 of the Federal Rules of Evidence.[5] Specifically, Sneden argues that a jury should be able to consider available photographic evidence and determine, without the specialized knowledge of an expert engineer, whether the defect in the deck existed and whether it caused Ms. Diaz's accident. Sneden Mem. at 14-15. Sneden does not dispute the expert engineering qualifications of Pasaturo, nor does it raise any questions concerning the reliability of Pasaturo's observations and methodology. Here, plaintiffs offer Pasaturo's expertise to help establish the origin and duration of the defect, Pls. Exp. Discl. at ECF 6-7, which Sneden itself places at issue by denying that it could have known about the defect for a long enough time such that it could have repaired

---

[5] Although plaintiffs refer to Mr. Schwartz as a "security expert" who will "offer an opinion" based on his observations as well as "all of the evidence admitted during trial of this matter; depositions, diagrams, photographs, and his professional knowledge and experience," Pls. Exp. Discl. at ECF 5, Schwartz, a private investigator, does not have expertise to opine about "defects" or "negligent conditions." See, e.g., Brady v. Chemical Construction Corp., 740 F.2d 195, 200-201 (2d Cir. 1984) (noting that investigator who testified regarding facts he personally learned during investigation was properly admitted as lay, not expert, witness). However, he is a competent fact witness who may testify about his observations, measurements, and other first-hand factual knowledge. The report presently before the court on these motions contains only such factual observations made by Mr. Schwartz, namely, measurements and photographs of the deck, and does not include any "expert" opinions or conclusions. It will thus be considered as fact evidence presented by a lay witness competent to report on such observations.

it, Sneden Mem. at 10, 12.  Pasaturo's report is also offered to establish that the defects violated

various building codes, an analysis that falls outside the scope of an ordinary juror's

understanding and requires professional knowledge.  It is well established that engineering

expertise may be helpful and admissible to shed light on the existence of a defective condition

and whether it is causally related to a particular accident.  See, e.g., Melini, 2009 WL 413608, at

*5 (finding that expert's "education and experience in engineering and building code compliance

give him an adequate background to offer his opinion" in a structural defect matter); McHale v.

Wescott, 893 F. Supp. 143, 148 (N.D.N.Y. 1995) (holding that expert testimony regarding

existence of alleged structural defect created issue of fact precluding summary judgment);

Manning v. Tracy J's, Inc., No. 06 CIV. 956, 2008 WL 1780048, at *6 n.7 (S.D.N.Y. Apr. 17,

2008) (considering expert opinion of structural engineer regarding existence of handrail defect in

denial of summary judgment motion).  Thus, Pasaturo's testimony may be of assistance to the

jury, and his opinion may be considered by this court in determining the existence and nature of

the defect and whether it caused plaintiff's injury.

Sneden's objections to the Schwartz and Pasaturo Reports are therefore without merit; the

witnesses' reports and affidavits will be considered as part of the record in determining these

summary judgment motions.

## III.     Defendants' Liability

Under New York law, a landowner must maintain its property in a reasonably safe

condition, taking into consideration the possibility of injuries resulting from foreseeable and

reasonable use of the property.  Basso v. Miller, 352 N.E. 2d 868, 872 (N.Y. 1976).  To establish

a negligence claim against a landlord or tenant for injuries sustained on the leased premises, the

plaintiff must demonstrate "that the landowner [or tenant] controls the property, that a defect

exists, and that the defect causes plaintiff's injuries." McHale, 893 F. Supp. at 147 (citing Turrisi v. Ponderosa, Inc., 578 N.Y.S.2d 724, 726 (App. Div. 1992)). On a motion for summary judgment, the court must make "the threshold determination as to whether the plaintiff, by introducing adequate evidence on each element, has made out a case sufficient in law to support a favorable jury verdict." Basso, 352 N.E.2d at 873.

### A.     Defendants' Control of Leased Premises

Plaintiffs have established that at the time of the incident, Calabrese and CAL6 were the owners of the premises and Sneden was the tenant operating Play Sports Lounge.  None of the defendants assert that they cannot be held liable because they did not have control over the premises on the date of the incident.  CAL6 does contend, however, that it "played no role whatsoever in connection with the Plaintiff's alleged accident."  CAL6 Mem. at 22.  CAL6 argues that it did not have a presence on the premises on the night of the incident, did not have any actual or constructive notice of the alleged defect, did not perform any repairs to the deck after Sneden became a tenant in 2008, and was "not required to maintain and/or repair the deck area."  Id.   As will be addressed below, CAL6 has moved for summary judgment on its cross-claims for "common-law indemnification and/or contribution" from Sneden, alleging that it was not negligent and that, if there was negligence, Sneden was the only negligent party.  CAL6 does not argue, however, that it did not have a duty of care towards the plaintiff and other patrons at the premises.

Plaintiffs have introduced adequate evidence of both defendants' control over the premises to support a jury verdict in plaintiffs favor.  Sneden's principal, Mr. Gualtieri, testified that he managed the bar on a regular basis, and was present on the evening of the incident. Gualtieri Dep. at 18-19, 31.  Sneden was clearly an active tenant with control over the premises

on the night in question.  Pls. Mem. At ECF 23.

As to CAL6, under New York law, an out-of-possession landlord is not liable for personal injuries sustained on the property unless the landlord retains control over the leased premises.  Dominguez v. Food City Markets, Inc., 756 N.Y.S.2d 637, 639 (App. Div. 2003).  A landlord's obligation to maintain and repair the premises can establish control over the property.  Taylor v. Lastres, 847 N.Y.S.2d 139, 140 (App. Div. 2007) ("Control may be evidenced by lease provisions making the landlord responsible for repairs or by a course of conduct demonstrating that the landlord has assumed responsibility to maintain a particular portion of the premises.").  Where a landlord retains control over the leased premises, it has a duty to exercise reasonable care to protect people on the property from dangerous conditions.  Tagle v. Jakob, 763 N.E. 2d 107, 108-09 (N.Y. 2001) (citing Basso, 352 N.E. 2d at 872).

Plaintiffs point to the lease agreement between CAL6 and Sneden, which includes language that reserves "structural repairs" as an obligation of the landlord.  Pls. Mem. at ECF 24; Rider, ¶ 28.  Plaintiffs' expert engineering witness has opined that the unevenness of the deck planks was a "structural" defect that violated New York City building codes.  Pls. Mem. at ECF 24; Affidavit of Joseph A. Pasaturo, attached as Ex. B to Pls. Mem., at ECF 32.  A reasonable jury considering this evidence could find that "the lease provides [CAL6] with a right of entry" to make these obligatory structural repairs.  Pls. Mem. at 24.  This is sufficient to establish CAL6's control over the premises and potential liability for dangerous defects.

### B.    Existence of Defect

"[W]hether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury." Trincere v. Cnty. of Suffolk, 688 N.E. 2d 489, 490 (N.Y. 1997)

(internal citations and quotation marks omitted); accord Alig v. Parkway Parking of N.Y., Inc., 829 N.Y.S.2d 242, 244 (App. Div. 2007). Nevertheless, Sneden argues that plaintiffs have failed to identify the specific defect that caused Ms. Diaz's injury, Sneden Mem. at 4-7, and CAL6 argues that the defect identified by plaintiffs is trivial and not actionable, CAL6 Mem. at 15-17. Resolving ambiguities and drawing inferences in plaintiffs' favor, neither of these arguments has merit.

### 1. Identifiable Defect

Sneden argues that it is entitled to summary judgment on plaintiffs' negligence claim because the "record is devoid of evidence identifying the alleged defect" and plaintiffs have failed to "identify the specific defect that allegedly caused the subject accident." Sneden Mem. at 4-5. In a trip and fall case, a "plaintiff's inability to identify the cause of his or her fall is fatal to his or her cause of action" because any finding of causation would be based on speculation. Jackson v Fenton, 831 N.Y.S. 2d 260, 261 (App. Div. 2007) (collecting cases); see also Ash v. City of New York, 972 N.Y.s. 2d 594, 596 (App. Div. 2013) (plaintiff could not identify what caused her to fall and only speculated that it was a tuft of grass); Rajwan v. 109-23 Owners Corp., 919 N.Y.S.2d 385 (App. Div. 2011); Louman v. Town of Greenburgh, 876 N.Y.S.2d 112 (App. Div. 2009). Here, however, drawing all inferences in their favor, plaintiffs have "clearly identified the cause of [Ms. Diaz's] fall," Jackson, 831 N.Y.S. 2d at 261, through her testimony and other admissible evidence.

Sneden's initial arguments – that plaintiffs did not clearly identify the defect in the pleadings, Sneden Mem. at 5, and that they provided insufficiently detailed interrogatory responses, id. at 6 – are neither timely nor relevant on a motion for summary judgment. Nnebe, 644 F.3d at 156 (summary judgment record not limited to pleadings or interrogatories). In any

event, plaintiffs provided clear and detailed descriptions through deposition testimony, expert reports, and photographs that identify the alleged defect – uneven decking at the bottom of the staircase, with a two-inch height differential between the first and second planks of wood on the lower deck, at the bottom of the stairs on the right hand side.  Schwartz Report at 2; Pl. Dep. at 42-44, 169-70.

Finally, Sneden argues that the photographs submitted by plaintiffs' witness do not depict a defect in the first two planks of the deck at the bottom of the staircase, and that there is no evidence of a defect at this location.  Sneden Mem. at 6-7.  Regardless of which defects are visible in the various photographs, however, Ms. Diaz's deposition testimony and Mr. Schwartz's findings provide sufficient evidence that the deck planks were uneven at the location where Ms. Diaz alleges her injury occurred.[6]  The weight of the photographic evidence and credibility of the witnesses are determinations for the factfinder at trial; for the purposes of summary judgment, plaintiffs have offered sufficient evidence, photographic and otherwise, such that a reasonable trier of fact could identify the alleged defect and proceed to consider whether it caused Ms. Diaz's injury.

### 2.    Trivial Defect

CAL6 argues that the alleged defect was trivial in nature, as Ms. Diaz did not stub her toe or slip, but merely sensed that the decking was uneven.  CAL6 Mem. at 16.  CAL6 also points to Mr. Gualtieri's testimony that any unevenness at the bottom of the stairs on the deck area was less than one centimeter.  CAL6 Mem. at 17.

A property owner may not be held liable for "trivial defects on a walkway . . . as a

---

[6] Though evidence of repair is inadmissible under Federal Rule of Evidence 407 to prove Sneden's negligence, Sneden's claim that its own photographs show no defect, Sneden Mem. at 7, is undercut by the observations of plaintiffs' expert witness, who noted that the defective portion of the deck appeared to have been repaired in the months following the accident.  Pasaturo Report; Pls. Mem. at ECF 19.

consequence of which a pedestrian might merely stumble, stub his toes, or trip over a raised projection." <u>Trincere v. Cnty. of Suffolk</u>, 648 N.Y.S. 2d 126, 128 (App. Div. 1996) (internal quotation marks omitted).  Whether a defect is trivial is not subject to a <u>per</u> <u>se</u> rule based on the size of a defect; rather, the size, irregularity, and appearance of the defect must be considered "along with the 'time, place and circumstance' of the injury."  <u>Trincere</u>, 688 N.E.2d at 490 (quoting <u>Caldwell v. Village of Island Park</u>, 107 N.E.2d 441, 443 (N.Y. 1952)). Assessing the triviality of the defect is appropriate on a motion for summary judgment.  <u>Natijehbashem v. United States</u>, 828 F. Supp. 2d 499, 507 (E.D.N.Y. 2011) ("Where the dangerous or defective condition alleged by a pedestrian is a height differential of approximately one inch (1"), New York courts, and courts applying New York law, generally grant summary judgment dismissing the case."); <u>see also</u> <u>Losito v. JP Morgan Chase & Co.</u>, 899 N.Y.S.2d 375, 376 (App. Div. 2010) (dismissing as trivial and non-actionable claim where photographs showed that the alleged defect was "slight and [ ] there was no elevation differential" and where the accident occurred "during daylight hours on a clear day with nothing obstructing [plaintiff's] view"); <u>Zalkin v. City of New York</u>, 828 N.Y.S.2d 485, 486 (App. Div. 2007) (granting summary judgment against plaintiff who alleged a "3/4 of an inch difference in the height elevation between the edge of the concrete slab which had caused the plaintiff to fall and the adjacent concrete slab"); <u>but see</u> <u>Habecker v. KFC U.S. Properties, Inc.</u>, 928 F. Supp. 2d 648, 655 (E.D.N.Y. 2013) (collecting cases denying summary judgment on motions alleging trivial defects);  <u>D'Nelson v. Costco Wholesale Corp.</u>, 2006 WL 767866, at *6 (E.D.N.Y. Mar. 24, 2006) (denying summary judgment and submitting case to jury "to determine whether the defect was so trivial as to not be actionable," given disputed issues of fact regarding the height differential and circumstances of plaintiff's fall); <u>Sanna v. Wal–Mart Stores, Inc.</u>, 706 N.Y.S.2d 156, 157 (App. Div. 2000) (finding triable issue

of fact as to whether color of carpet and poor lighting created a trap, despite alleged defect of only 1/2 inch). This review often requires an examination of photographs to determine "whether a defect is trivial as a matter of law." Czochanski v. Tishman Speyer Properties, Ltd., 45 F. App'x 45, 47 (2d Cir. 2002) (applying the trivial defect analysis to stairways).

Here, plaintiffs have submitted evidence indicating that the uneven planks in the deck constituted a defect that was more than trivial. First, plaintiffs' investigator observed that the height differential between the uneven planks was two inches. Schwartz Report at 2. This rebuts CAL6's reliance on Mr. Gualtieri's testimony that the difference was only one centimeter, or less than half an inch. CAL6 Mem. at 17; Gualtieri Dep. at 44. Plaintiffs have thus presented a disputed issue of material fact that precludes a determination on triviality at the summary judgment stage.

Furthermore, a jury could find that the defect was not trivial based on its appearance and the time, place, and circumstance of the injury. For example, CAL6 acknowledges that the incident occurred around midnight, when it was likely dark on the deck, and the defects not readily apparent. Cf. Tzul v. United States, No. 12 CV 804, 2014 WL 4773972, at *5 (E.D.N.Y. Aug. 14, 2014), report and recommendation adopted, 2014 WL 4773974 (E.D.N.Y. Sept. 24, 2014) (fact that incident occurred during daylight hours weighs in favor of triviality); Shiles v. Carillon Nursing & Rehab. Ctr., LLC, 864 N.Y.S.2d 439, 439 (App. Div. 2008) (finding defect trivial where "[the injury] occurred during daylight hours on a clear day with nothing obstructing [plaintiff's] view"). Additionally, a jury could find that the location of the alleged defect, at the bottom of a staircase, presented a greater risk of injury than a comparable defect on regular ground. See, e.g., D'Nelson, 2006 WL 767866, at *6 (considering location of defect at bottom of escalator in determining triviality). Finally, plaintiffs' expert opines that the uneven decking

violated building codes and created an unsafe condition for falls, providing further evidence that the defect was more than trivial. Pasaturo Report; <u>see</u> <u>McHale</u>, 893 F. Supp. at 148 (finding testimony from plaintiff's structural engineer that stairs did not comply with building code "sufficient to raise an issue of fact regarding the existence of a longstanding structural defect"). [7]

Plaintiffs have provided enough evidence suggesting that the defect was not trivial, including the disputed issue of fact regarding the size of the defect, that the issue of triviality must be determined by the factfinder and not on summary judgment.

### C. Defendants' Actual or Constructive Notice of Defect

In addition to establishing the existence of a defective condition on the premises, plaintiffs must also show that defendants had actual or constructive notice of that defect. <u>Taylor v. United States</u>, 121 F.3d 86, 89-90 (2d Cir. 1997) (citing <u>Gordon v. Am. Museum of Natural History</u>, 492 N.E.2d 774 (N.Y. 1986)). "A defendant has actual notice of a defect if he created the condition or received reports of it such that he has actual knowledge of the defect's existence." <u>McHale</u>, 893 F. Supp. at 148. Even if defendants lacked actual notice of a structural defect, however, plaintiffs could still recover if a jury concluded that defendants should have known about the defect. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it." <u>Gordon</u>, 492 N.E.2d at 775; <u>accord McHale</u>, 893 F. Supp. at 148.

The defendants argue that they did not create the defect; CAL6 states that it did not perform any work on the deck since 2008, and Sneden claims that it did only cosmetic repairs

---

[7] CAL6 notes that the plaintiff had consumed "alcoholic beverages" on the evening of the incident, apparently suggesting that her state of mind should be considered in assessing whether the defect was trivial. CAL6 Mem. at 16. It is unclear whether this fact is disputed, as CAL6's Rule 56.1 Statement refers only to "an" alcoholic beverage consumed earlier that evening, CAL6 56.1 Statement, ¶ 4, and there is no testimony or evidence alleging that Ms. Diaz was intoxicated as a result of the drink. In any event, the other evidence and circumstances provide a sufficient basis to conclude that the defect was not trivial, regardless of whether plaintiff had consumed a drink.

such as painting or power washing. CAL6 Mem. at 17-18; Sneden Mem. at 10. Plaintiffs do not allege that defendants created the defect in the decking. Rather, their expert opines that the damage "appears to be deterioration that took place over a significant period of time, such as many weeks or months and not something that could [have] happened suddenly." Pasaturo Report at 2. Nor do plaintiffs challenge the testimony of CAL6 and Sneden representatives that they received no complaints about the stairs or deck, nor reports of people falling or injuring themselves on the stairs or deck. CAL6 Mem. at 18; Sneden Mem. at 11. Instead, plaintiffs focus on whether defendants had constructive notice of the defect that would trigger a duty to repair. Pls. Mem. at ECF 22-25.

Defendants argue that they did not have constructive notice because the alleged defect was not visible and apparent for a sufficient length of time such that they should have been able to discover and correct it. CAL6 Mem. at 19-20; Sneden Mem. at 12. Sneden claims that it was not "visible and apparent" at all, noting that Ms. Diaz herself did not observe the uneven decking. Sneden Mem. at 12. This confuses the question, which is not whether plaintiff saw the defect – presumably plaintiffs in most cases do not, or they would not have tripped and fallen – but rather whether defendants could or should have seen the defect and thus had notice of its existence. Indeed, Ms. Diaz would have had greater difficulty observing the defect given that she was on the outdoor deck in the middle of the night and it was her first visit to the premises, Pl. Dep. at 26, whereas Sneden's owner and employees observed the deck on a regular basis, including during daylight hours, Pls. Mem. at 23. Ms. Diaz's failure to observe the defect carries little weight in determining whether Sneden's representatives should have seen it.

Sneden also alleges, again, that plaintiffs' photographs of the deck do not show a noticeable defect at the specific site where Ms. Diaz testified that she placed her foot on the

deck. Sneden Mem. at 12. As discussed above, however, the location of that site has been sufficiently identified and described in the record, such that a jury could find that a two-inch differential in the height of the planks at that location was not trivial and, by extension, that such a defect would have been visible and apparent to defendants. Furthermore, a jury could reasonably find that the photographs show clearly that nearby defects in the decking were visible and apparent, and that defendants should therefore have been on notice of the specific defect in question located only a foot or two away. Sneden argues that evidence of any "awareness of a general dangerous condition is not enough to charge a defendant with constructive notice of the particular dangerous condition that caused the injury." Taylor, 121 F.3d at 90 (citing Gordon, 492 N.E.2d at 774). A court must "examine the facts of each case," however, to "determine whether the plaintiff has proven notice of a dangerous condition at a level of specificity sufficient to support liability." Id. In Taylor, constructive notice required defendant's awareness that a door was slamming, not merely that it was generally malfunctioning, id. at 91; in Gordon, where the plaintiff slipped on a piece of paper, it was required that there be constructive notice of the specific litter involved in the incident, not merely notice that there was dangerous litter located on the premises more generally, Gordon, 492 N.E.2d at 775. In this case, plaintiffs have alleged that the accident was caused by visible and apparent unevenness in the decking on the lower deck at the bottom of the stairs, and have submitted photographs of other defects in that immediate area. This is specific enough that a jury considering the photographic evidence, along with the other evidence discussed above, could reasonably conclude that the defendants had constructive notice of the entire defective area, including the uneven planks that allegedly caused plaintiff's injury.[8] See also McHale, 893 F. Supp. at 149 (citing Putnam v. Stout, 345 N.E.2d

---

[8] CAL6 does not argue that the defect was not apparent, only that it is unclear how long it was there. As discussed above and argued by plaintiffs, Pls. Mem. at ECF 24, there is a dispute of fact as to whether the provisions of the

319 (N.Y. 1976), for proposition that constructive notice of defect may be based in part on knowledge of similar nearby defect).

Whether or not the alleged defect in the deck existed for a sufficient length of time prior to the accident is also a material fact that is disputed by the parties. Defendants charge that plaintiffs have failed to state how long the uneven decking existed prior to Ms. Diaz's injury, and assert that the lack of prior falls suggests the defect was not present for a significant length of time. CAL6 Mem. at 19-20; Sneden Mem. at 12. However, plaintiffs' expert, Mr. Pasaturo, reported that, in his opinion, the nature of the defect "appears to be deterioration" and that it "took place over a significant period of time, such as many weeks or months and [was] not something that could [have] happened suddenly." Pasaturo Report at 2; Pls. Mem. at ECF 23.

Viewing the record in the light most favorable to plaintiffs, the evidence raises triable issues of fact regarding whether defendants had constructive notice of a structural defect in the deck boards at the base of the stairs, specifically, whether the defect was visible and apparent and whether it existed for a sufficient period of time. A jury could credit testimony that there was a two-inch gap in decking, supported by photographic evidence of similar unevenness, and that this unevenness constituted a visible and apparent defect. It could also reasonably conclude that the slowly deteriorating condition existed for a sufficient period of time such that the defendants knew or should have known about it and taken steps to correct it. Therefore, defendants are not entitled to summary judgment on the issue of constructive notice.

### D.      Proximate Cause

Finally, plaintiffs must establish that the alleged structural defects in the decking proximately caused Ms. Diaz's injuries. To demonstrate proximate cause, a plaintiff must show

---

lease agreement between CAL6 and Sneden required CAL6 to make "structural repairs" on the premises, which would establish CAL6's control over the deck. Plaintiffs have thus provided sufficient evidence that CAL6 was not an out-of-possession landlord, and had reason to be present on the premises and constructive notice of the defect.

that the injury was "a natural and probable consequence of the conditions present." Gordon, 492

N.E.2d at 775. "Although proximate cause can be inferred from circumstances underlying the

accident and need not be demonstrated by direct evidence, mere speculation as to the cause of

injury is insufficient." Ascher v. Target Corp., 522 F. Supp. 2d 452, 456 (E.D.N.Y. 2007)

(collecting cases); see also Ellis v. Cnty. of Albany, 613 N.Y.S.2d 983, 984-85 (App. Div. 1994)

(finding proximate cause without direct evidence is appropriate so long as based on "logical

inferences to be drawn from the evidence"). "Although it is ordinarily for the trier of fact to

determine legal cause, where only one conclusion may be drawn from the established facts the

question of legal cause may be decided as a matter of law." Howard v. Poseidon Pools, Inc., 72

N.Y.2d 972, 974 (1988) (internal quotation marks and alterations omitted) (finding that

plaintiff's conduct, rather than any negligence by defendants, was sole proximate cause of

injuries).

Defendant Sneden argues that plaintiffs cannot establish proximate cause because they

can only speculate, not prove, that it was the uneven planking that caused Ms. Diaz's injury.

Sneden Mem. at 8. Sneden cites several cases for the proposition that causation cannot be based

on speculation, but in those cases plaintiffs could not identify the supposed defect that caused

their injuries. Costantino v. Webel, 869 N.Y.S.2d 179 (App. Div. 2008) (insufficient evidence of

causation where no connection made between unsafe building code violations in a doorway and

accident occurring in the doorway); Luciano v. Trans World Airlines, Inc., No. 96 CV 3999,

1998 WL 433808, at *3 (E.D.N.Y. July 28, 1998) (plaintiff did not know what caused accident

and no evidence supported theory that she fell over a suitcase).

Here, plaintiffs have alleged that as Ms. Diaz stepped onto the lower deck, she sensed that it was not flat, lost her balance, heard a snap, and felt pain.[9] This testimony is supported by photographic and other evidence that there were uneven planks and other defects at the bottom of the stairs where plaintiffs claim the injury occurred. Even if the precise location or nature of the defect is not certain, plaintiffs have adduced evidence of a tangible, identifiable, and non-speculative potential cause of Ms. Diaz's injury. McHale, 893 F. Supp. at 150 ("[Plaintiff] need not prove the precise step on which [she] fell or the precise condition of that step in order to show proximate cause."). Hearing this evidence, and drawing logical inferences in plaintiffs' favor, a jury could find that it was the defective condition in the decking that proximately caused her injury.

Defendant Sneden also notes that Ms. Diaz admitted that she had worn wedge or platform shoes at the time of the incident, apparently suggesting an alternative potential cause for the injury. Sneden Mem. at 9; Pl. Dep. at 146. However, plaintiffs need not exclude other possible causes. Plaintiffs must adduce evidence showing only that it was "more likely or more reasonable that the alleged injury was caused by the defendants' negligence than by some other agency." Ascher, 522 F. Supp. 2d at 456; see also Scala v. Scala, 818 N.Y.S.2d 151, 152 (App. Div. 2006) (noting that there may be more than one proximate cause of an accident). While plaintiffs may not ultimately be able to establish that the defective decking was the proximate cause of Ms. Diaz's injury, the evidence in the record at this stage rises beyond mere speculation. A reasonable jury could conclude, after examining the evidence and drawing all inferences in plaintiffs' favor, that it was the defective deck planks that caused Ms. Diaz's injury.

---

[9] Sneden argues that the planking could not have contributed to Ms. Diaz's injury because she was already "standing" on the lower deck when she lost her footing and did not trip or stumble. Sneden Mem. at 8. Plaintiffs, however, have adduced evidence disputing that characterization, which is sufficient to support an inference that she was in motion when the injury occurred. Pls. Mem. at ECF 22; Pl. Dep. at 42-46. This dispute raises an issue of fact to be tried by the jury.

**IV.     CAL6's Cross-Claims Against Sneden**

CAL6 moves for summary judgment against Sneden on its cross-claims for "common-law indemnification and/or contribution and/or contractual indemnification."  CAL6 Mem. at 20-21.  It argues that there is not a "shred of evidence that would support the conclusion that the CAL6 Defendants were negligent in any manner," and that if anyone is held liable for Ms. Diaz's injury it should be Sneden, because the tenant failed to properly repair or maintain the deck. CAL6 Mem. at 22; Reply Memorandum of Law in Further Support of the CAL6 Defendants' Motion for Summary Judgment on its Cross-Claims for Common-Law Indemnification, Contribution and/or Contractual Indemnification as Against 2 Sneden Avenue, LLC ("CAL6 Reply"), Dkt. #50, at 8.

In order to prevail on summary judgment on its claim for common-law indemnification, the moving party must establish (1) that it was not negligent and (2) that the proposed indemnitor's negligence was a cause of the injury for which the indemnitee has been held liable. Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 319, 326 (S.D.N.Y. 2010). Such a claim is barred when both parties are "tortfeasors [who] violated the same duty to the plaintiff." Gabriel Capital, L.P. v. Natwest Financial, Inc., 137 F. Supp. 2d 251, 269 (S.D.N.Y. 2000).  Thus, common-law indemnification is typically available in cases where a party is held liable solely by operation of law or vicarious liability.  McCarthy v. Turner Construction, Inc., 953 N.E.2d 794, 798-99 (N.Y. 2011); see, e.g., Firestone v. Berrios, No. 12-CV-0356, 2013 WL 297780, at *16 (E.D.N.Y. Jan. 22, 2013) ("[I]n order for [claimant] to be entitled to indemnification, it would have to be alleged that she committed no wrong, but only by virtue of her relationship with the torfeasor, she is nevertheless potentially liable to [plaintiff].").

CAL6 has not alleged such a relationship here, nor has it made clear how any liability it might incur would be based on anything other than its own wrongdoing. In any event, it is not entitled to summary judgment on its cross-claim for common-law indemnification because, as discussed above, whether CAL6 or Sneden are liable for Ms. Diaz's injury depends on material issues of disputed fact that must be resolved by the trier of fact. A reasonable jury may conclude that CAL6 was negligent because it had constructive notice of a non-trivial defect in the outdoor decking but breached its duty to make structural repairs, causing plaintiff's injury. Alternatively, now drawing inferences in favor of non-moving party Sneden, a jury might consider the disputed issues of fact – including the credibility of plaintiffs' expert and the nature of the defect – and find that Sneden was not negligent or did not cause Ms. Diaz's injury, precluding CAL6's claim for indemnification.

The parties also advance conflicting interpretations concerning who was responsible for "structural repairs" under the Lease and Rider contracts, although their motion papers fail to adequately address this issue. See CAL6 Mem. at 22, 24; CAL6 Reply at 8; Sneden Memorandum of Law Opposing Summary Judgment ("Sneden Opp."), Dkt. #49, at 9-10. CAL6 argues that Sneden created the defective condition by failing to repair or maintain the deck, but does not respond to the assertion that it was responsible for "structural repairs" under paragraph 28 of the Rider. CAL6 Reply at 8; Sneden Opp. at 9. This dispute further precludes a determination at the summary judgment stage as to defendants' negligence.[10]

---

[10] Unlike common-law indemnification, the right to contribution arises where one tortfeasor seeks to recover against other tortfeasors. Firestone, 2013 WL 297780 at *15 ("The right to contribution generally arises when multiple wrongdoers . . . each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries." (internal quotation marks omitted) (alteration in original)); Amusement Industries, 693 F. Supp. 2d at 325-27 ("Where a party seeking to recover against other tortfeasors is at fault, New York . . . relegates such a party to the remedy of contribution."). CAL6 does not address its cross-claim for contribution in its motion for summary judgment. It focuses instead on indemnification, arguing that it was not negligent and Sneden was negligent, not that it is entitled to contribution in the event both are found to be liable. Because the parties do not do so, I decline to address the cross-claim for contribution at this stage, particularly considering that such a

CAL6 also alleges entitlement to contractual indemnification from Sneden. CAL6 Mem. at 23-24; CAL6 Answer, ¶ 59. In order to succeed on this claim, CAL6 must show (1) that it was not negligent and (2) that a "promise to indemnify . . . can be clearly implied from the language and purpose of the entire [contractual] agreement and the surrounding circumstances." George v. Marshalls of MA, Inc., 878 N.Y.S. 2d 143, 148-49 (App. Div. 2009). As discussed above, there are disputed issues of material fact regarding CAL6's negligence; these issues preclude a finding of summary judgment in its favor on this cross-claim. As to the second element of contractual indemnity, there does not appear to be any language in the Lease or Rider promising or even suggesting indemnification. CAL6 nevertheless argues that the lease is "unequivocal and unambiguous" in requiring Sneden to indemnify CAL6 for liability stemming from plaintiff's accident, based on the clause in the Rider requiring that Sneden maintain a $1 million liability insurance policy for the benefit of CAL6 as landlord. Rider, ¶ 30; CAL6 Mem. at 23. Under New York law, however, "[a]n agreement to procure insurance is not an agreement to indemnify or hold harmless, " Kinney v. G.W. Lisk Co., 556 N.E.2d 1090, 1092 (N.Y. 1990), and courts consistently distinguish between the two, see, e.g., Town of Hempstead v. E. Coast Restaurant Group, LLC, 889 N.Y.S.2d 88, 90 (App. Div. 2009); McNamee Const. Corp. v. City of New Rochelle, 817 N.Y.S.2d 295, 296 (App. Div. 2006); Boyle v. City of New York, 655 N.Y.S.2d 23, 24 (App. Div. 1997); Spencer v. B.A. Painting Co., 638 N.Y.S.2d 37, 38 (App. Div. 1996) (holding that "insurance procurement clauses are entirely independent of indemnification provisions"); Macri v. Park S. Associates, 604 N.Y.S.2d 92, 93 (App. Div. 1993). Whether Sneden breached its contractual obligation to procure liability insurance is

_____

determination is premature given that neither party has been held liable or paid more than its share of a judgment against it. See, e.g., Board of Trustees of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp., No. 09 Civ. 6273, 2011 WL 6130831, at *2 (S.D.N.Y. Dec. 9, 2011) (dismissing counterclaim as premature absent finding of liability).

relevant only to a breach of contract claim, which CAL6 did not plead, and is not relevant to CAL6's cross-claim for contractual indemnification. CAL6's motion for summary judgment on its contractual indemnity cross-claim is therefore denied.[11]

## CONCLUSION

The record reflects triable issues of fact regarding whether the outdoor deck at Play Sports Lounge had a structural defect that was not trivial, whether the defendants had constructive notice of the defective condition of the deck, and whether the defective condition was the proximate cause of Ms. Diaz's injury. Accordingly, plaintiffs have adduced sufficient evidence to proceed to a jury on each of the elements of their negligence claim, and defendants' motions for summary judgment are denied. The record also reflects that there are issues of fact regarding CAL6 defendants' liability for negligence that preclude summary judgment on their cross-claims; the CAL6 motion for summary judgment on these cross-claims is also denied.


SO ORDERED.


                                        __/s/_____
                                        Allyne R. Ross
                                        United States District Judge


Dated:          December 4, 2014
                Brooklyn, New York

---

[11] Although this analysis demonstrates that there is no evidence in the record supporting CAL6's cross-claim against Sneden for contractual indemnification, Sneden has not itself moved for summary judgment on this claim.